IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

JOSEPH EDWARD SLOAN, BRYON
Z. MOLDO, Chapter 7 Trustee -- In re
Joseph Edward Sloan, Debtor,

      Plaintiffs,

v.                                                                  No. CIV 00-702 BB/WWD

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, a foreign corporation,
and RANDAL W. ROBERTS, Esq.,

      Defendants.

<u>MEMORANDUM OPINION
ON
ROBERTS' SUMMARY JUDGMENT MOTION</u>

THIS MATTER is before the Court on the motion of Defendant Randal Roberts seeking summary judgment. The Court having reviewed the briefs, heard oral argument on May 2, 2001, and received supplemental briefs, finds the motion supported in law, and it will be GRANTED.

*Discussion*

*Facts*

Joseph Sloan, a State Farm insured, was involved in an automobile accident with the Shelton family in December 1991. Very early in the prior litigation, the Sheltons,

through their counsel, Jacob Vigil ( now Mr. Sloan's counsel), demanded that State Farm settle the Sheltons' claims arising from the accident for the aggregate limit of Mr. Sloan's policy, $300,000. Before it retained Defendant Roberts, and steadfastly since, State Farm took the position that the policy limit was $100,000 per person, with the total for all victims not to exceed $300,000. Within a few months of the accident, State Farm offered to settle the claim of Barbara Shelton, who was the most seriously injured, for $100,000, but evaluated the claims of the other three Shelton family members at substantially less than $100,000 each and substantially less than the remaining $200,000. Based on its policy interpretation, State Farm declined to offer the full $300,000 aggregate limit to settle the Sheltons' claims. All of this occurred well before Mr. Roberts was hired by State Farm to defend Mr. Sloan under the policy.

When he was retained, Mr. Roberts independently evaluated the Sheltons' claims. He concluded that Barbara Shelton had a potential claim worth $400,000 to $600,000. He evaluated the remaining Shelton claims as follows: Michael Heider - $25,000; Virginia Heider - $15,000; James Shelton - $17,500. Again, under the State Farm interpretation, this evaluation fell well under $160,000 and far short of the $300,000 demanded by Sheltons' counsel.

Prior to trial, Mr. Sloan received several notices he might be exposed to excess personal liability over the policy limits. At the time he was retained to represent the Sheltons, their attorney, Jacob Vigil, wrote directly to Mr. Sloan ( before Mr. Sloan had

counsel), informing him that State Farm's position was that "you only have $100,000.00 worth of coverage for Mrs. Sloan's injuries." Ex. 1 to Aff. of Randal Roberts. Mr. Vigil went on to tell Mr. Sloan, "If there is only $100,000.00 under policy form 9805.5, you may be personally responsible for all damages over $100,000.00. If the policy will provide $300,000.00 under policy form 9805.3 only, then you may be personally responsible for any damages over $300,000.00." *Id.* On September 15, 1992, State Farm wrote to Mr. Sloan: "We are writing this letter to inform you that the claim presented against you by Barbara Shelton, et al, could possibly exceed the protection afforded you by your policy." Roberts Ex. 2.

On March 29, 1994, Mr. Roberts wrote Mr. Sloan: "One of the issues involved in the case is the amount of insurance coverage which you had available. I would ask that you check your files and send a copy of any policy or declaration sheet which was in effect at the time of the accident .... This might move the case to a quick resolution for you." Roberts Ex. 10. On February 3, 1995, Mr. Roberts wrote to Mr. Sloan: "You should note that we have attempted to settle the case but to date no settlement has been reached. The Plaintiffs are desirous of receiving $100,000 for Mrs. Shelton, $100,000 for Mr. Shelton and a total of $100,000 for the two children. State Farm has offered the sum of $100,000 for Mrs. Shelton, $11,000 for Mr. Shelton, $25,000 for Michael Heider and $10,000 for Virginia Heider." Roberts Ex. 11.

On July 17, 1996, Mr. Roberts wrote Mr. Sloan:

> At the conclusion of the deposition, I had a discussion with Plaintiffs' counsel about resolving the case. They want $300,000 to settle the case and assert that the entire $300,000 policy should be paid to them .... There has been a previous offer to Mrs. Shelton for $100,000, Mr. Shelton for $11,000, Michael Heider for $25,000 and Virginia Heider for $10,000. They further state that they would not even consider these sums if they do not contain financial information from you so you can prove that you do not have significant assets. If you have any assets, they will want an additional payment from you. They asserted, for example, if your house had no mortgage, that you would obtain a mortgage and provide payment to the Plaintiffs."

Roberts Ex. 14. Mr. Sloan did not respond.

Finally, on October 29, 1996, after the jury returned a verdict in excess of $700,000, Mr. Roberts wrote Mr. Sloan: "You also indicated that you might be willing to make some type of settlement offer to the Plaintiff to transfer various property to them to resolve all issues. As we discussed, I would ask that you send whatever proposal you might have to me and I will forward it to Plaintiffs' counsel." Ex. D to Roberts Supp. Br. Again, no response.

### *Legal Standard*

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, a

court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999). A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir. 1999). Instead, the nonmoving party must present facts such that a reasonable jury could find in its favor. *Id.* The Court will consider Defendant Roberts' motion in light of these standards.

### *Causation*

Defendant Roberts concedes the present record contains issues of material fact as to Defendant's duty and breach. There also appears to be little dispute that construing all reasonable inferences in the light most favorable to the nonmoving party, Plaintiff has suffered damage. Defendant Roberts, however, does challenge Plaintiff's showing on proximate cause. This element requires further analysis.

Plaintiff's counsel recognized the $300,000 policy limit of the State Farm policy and testified as follows regarding pretrial settlement negotiations:

> Q. Did they [Sheltons] ever give you authority to accept less than $300,000?
> A. Yeah. In fact, I think, even after I sent this [a settlement demand], and then they missed deadline on responding to it, to my formal offer, I continued to see if I

>  **could get them to act reasonably, and I think I, at some point, dropped the 300,000 demand down to 290, or 295, as I recall.**

**Jacob Vigil Dep. at 27.**

**State Farm never offered more than $177,000 under the policy. Even though Mr. Sloan now argues had Mr. Roberts discussed settlement options prior to the judgment being rendered, he would have personally contributed his houses and his IRA to settle this claim,[1] there is absolutely no evidence Plaintiff had access to the $113,000 or more necessary to make up the difference. Mr. Sloan filed supplemental answers to interrogatories prior to trial. He now summarizes these as follows:**

> **[I]n response to Interrogatory No. 4 seeking to discover "all stocks, bonds, certificate of deposit, governmental bonds, annuities and other securities that you own whether individually or jointly, ... the amount of such bond or certificate of deposit," Mr. Robert conveyed that Mr. Sloan had "as of July 26, 1996, $7,532 in equity in securities in an account at Kennedy, Cabot & Co., Inc. as well as an IRA which has, as of the same date, a total value of $15,216.00." Additionally, in response to Interrogatory No. 5, Mr. Roberts provided a list stating the addresses of each property Mr. Sloan owned, the market value and the current loan value. As of July 26, 1996, Mr. Sloan owned <u>nine</u> rental properties in California. Mr. Sloan also owned a trust deed of $17,000.00.**

**Plaintiffs' Supp. Br. at 3 (citations omitted).**

**The loan values for three of the rental properties clearly exceeded the market value so these properties could not contribute to the settlement. Looking at the**

---

[1] Plaintiff's Supp. Resp. at 3.

6

**remaining assets, Mr. Sloan owned (a) $7,532 in equities, (b) an IRA account valued at $15,216,[2] (c) a deed of trust worth $17,000, (d) rental properties with an equity value of $13,500, (e) two vehicles with an equity of $3,500, and (f) a credit union account with a $994 balance. His total personal assets of $57,742 combined with State Farm's $177,000 only equals $234,742 – an amount far short of $290,000, the lowest amount Plaintiffs' counsel mentioned as potentially acceptable.**

**Plaintiff therefore advances nothing but the affidavit and testimony of its expert, Attorney Brian Query, to support the proximate cause element. Mr. Query testified that it was his opinion that if Defendant Roberts had strongly advocated that State Farm pay more than the $100,000 per person, which it viewed as the limits of the policy, he might have persuaded them to pay the total $300,000 policy limit.[3] Summary judgment is not**

---

[2] While it seems doubtful Plaintiff would have actually offered his IRA, since it was not protected in his eventual bankruptcy filing, it has been included to illustrate the maximum value of all Plaintiff's assets.

[3] Mr. Query's testimony is summarized in the following colloquy:

> Q: Can you explain the basis for that opinion?
> A: I think that's what I've been about all afternoon. In other words, I will say this: One can always – State Farm, for example, could always come in and say, "It wouldn't have made any difference if Randy Roberts would have advanced every one of those arguments that you say he should have advanced, and he could have made those arguments as vociferously as is humanly possible, and we would have told him to jump in the creek, and there wouldn't be any difference." But, I don't believe that to be the case.
> Q: Why not?
> MS. VIGIL: Objection. Asked and answered.
> THE WITNESSES: I would like to say that I think I have answered that. But the reason – you know, I'll try to put this in, like, one lump of coal, if you will. I think – I think, had those matters been vigorously advocated, had it been pointed out

7

**precluded by mere expert opinion.** *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88 (1st Cir. 1993); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985); *Cadarian v. Merrill Dow Pharmaceuticals, Inc.*, 745 F. Supp. 409, 411-2 (E.D. Mich. 1989). The facts on which the expert relies must be sound. *Mateo v. M/S KISO*, 805 F. Supp. 761 (N.D. Cal. 1991); *State Farm Fire & Cas. Co. v. Miles*, 730 F. Supp. 1462, 1473 (S.D. Ind. 1990). Mr. Query speculates that had Defendant Roberts advocated vigorously enough, State Farm may have changed its opinion and offered more than the $100,000 per person limit. Since State Farm continues to maintain its position that the $100,000 per person limit applies even in the face of the excess judgment and this lawsuit, Mr. Query's speculation seems ill founded and is not persuasive.[4] Moreover, that speculation is contradicted by Mr. Roberts' direct deposition testimony:

> Q: If you had made that argument, or if you had recommended to State Farm that the $100,000 policy limits be paid up to the $300,000 aggregate limit to settle the claims against Mr. Sloan, do you believe that State Farm would have followed your recommendation?

---

> to State Farm that – you know, they were exposing themselves to a bad faith claim.
> Q: Do you think they didn't know that?
> A: Well, one would hope that they did, but I don't know that they were paying attention to it. I'm reluctant to speculate that I – that they didn't know that.

Query Dep. at 243-4.

[4] Expert opinion based on speculation is not sufficient to withstand a motion for summary judgment. *Crumley v. Memorial Hosp., Inc.*, 509 F. Supp. 531 (E.D. Tenn. 1978), *aff'd*, 647 F.2d 164 (6th Cir. 1981); *Jones v. National Distillers & Chem. Corp.*, 484 F. Supp. 679 (S.D.N.Y. 1979); *Duplan Corp. v. Deering Milliken, Inc.*, 370 F. Supp. 761 (D.S.C. 1972).

8

>       A:   No.
>       Q:   Why "no"?
>       A:   Because I made that argument that you made
> to them, and they did not.

Roberts Dep. at 91.

In order to recover on a claim for professional negligence, a plaintiff must show that defendant's negligence was the cause of his damage. *Resolution Trust Corp. v. Barnhart*, 862 P.2d 1243, 1247 (N.M. App. 1993); *Armijo v. Albuquerque Anesthesia Servs., Ltd.*, 679 P.2d 271 (N.M. App. 1984). At best, Mr. Query's testimony on proximate cause can be interpreted as an opinion that vigorous advocacy by Mr. Roberts could have increased the odds State Farm would have abandoned its policy interpretation and offered enough to satisfy the Sheltons' lowest settlement offer. Even if the Court were to assume that strong advocacy by Mr. Roberts could have reduced the risk of an excess damage verdict by increasing the possibility State Farm would have offered more, a reduction of risk does not meet the requirement of proximate cause. *Carrillo v. Coors*, 901 P.2d 214 (NM. App. 1995); *Myers v. Robert Lewis Seigle, P.C.*, 751 A.2d 1182 (Pa. Super. 2000). Moreover, as noted, Defendant has presented sworn testimony that Mr. Roberts presented this argument and was unsuccessful.

**An Order consistent with this opinion shall be entered herewith.**

**BRUCE D. BLACK**
**United States District Judge**

**Counsel for Plaintiffs:**

    **Lisa K. Vigil, Vigil & Vigil, Albuquerque, NM**
    **Steve Vogel, Albuquerque, NM**

**Counsel for Defendant Roberts:**

    **Jack M. Brant, Rodey Law Firm, Albuquerque, NM**