**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JOSEPH EDWARD SLOAN, BRYON Z. MOLDO,
Chapter 7 Trustee -- In re JOSEPH EDWARD
SLOAN, Debtor,

        Plaintiffs,

v.                                                                                                No. CIV 00-702 BB/WWD

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, a foreign corporation, and
RANDAL W. ROBERTS, ESQ.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court for consideration of two motions for summary judgment filed by Defendant State Farm (Docs.218 and 225). The Court took these motions under advisement at a hearing held on September 18, 2001. At that hearing, the Court denied in open court a third motion for summary judgment (Doc. 223). Since the hearing the parties have been given an opportunity to submit further materials in support of their positions. The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that Defendant's motion for partial summary judgment on the issue of the applicable policy limits (Doc. 225) will be denied, while Defendant's motion for partial summary judgment on the application of the unfair practices statute (Doc. 218) will be granted.

"Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed.

R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." Id. On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." Walker v. NationsBank of Florida, 53 F.3d 1548, 1555 (11th Cir. 1995). The Court will address the motions for summary judgment with these standards in mind. The parties are well aware of the facts in this case and the Court will not repeat them here.

**Motion for Summary Judgment Concerning Applicable Policy Limits**

As the parties acknowledge, the main issue with respect to this motion is whether there is a genuine issue of fact concerning which policy form was in effect for Plaintiff Sloan's ("Plaintiff") insurance coverage, in December 1991. At various times, three different forms have been suggested as being applicable at the relevant time. Following the 1991 accident, Defendant initially certified that form 9805.3 was the correct form. After it was pointed out that form 9805.3 might provide greater coverage than Defendants believed was due, Defendant maintained the certification was a mistake and that 9805.5, a form providing the "correct" amount of coverage, was the proper form. During this litigation, Plaintiff provided form 9805.4, along with a renewal notice that may or may not have accompanied that form, and maintained 9805.4 is the applicable form. In last week's hearing, however, counsel for Plaintiff appeared to abandon that position and return to Plaintiff's prior argument, that 9805.3 (as certified by Defendant) was the true form in effect in December 1991.

Defendant maintains there is no genuine issue of material fact, that 9805.5 was the form in effect at the relevant time, and that any attempt by Plaintiff to demonstrate otherwise is a sham

assertion designed solely to avert a grant of summary judgment. Defendant claims that in the prior litigation arising out of the auto accident, Plaintiff admitted form 9805.5 was the form he had in his Subaru file, and he should not now be allowed to contradict that admission. According to Defendant, Plaintiff's affidavit filed in this case, indicating that in the prior litigation he simply gave his insurance documents to his attorney, who selected the form to provide at the deposition, should be given no effect.

The Court's review of the evidence submitted to date, concerning the proper form number, indicates there is evidence of the following: (1) Plaintiff had in his possession both form 9805.4 and form 9805.5 (Exhs. 1 and 4, Plaintiff's Mem. in Support of Response to Mot. for Partial Summary Judgment); (2) after checking information contained on a "policy master record," Defendant certified that form 9805.3 was the form in effect in December 1991 (Exh. A, Reply to Plaintiff's Supplemental Response, Cantwell depo., 12/1/95, p. 34-39); (3) for the time period August 1989 to February 1990, prior to the accident, at least two declarations pages have been submitted to the Court – one showing form 9805.3 as the accompanying form, and one showing form 9805.5 (Exhs. B and C, *id.*)[1]; (4) Cantwell has no idea how it would be possible to have two different declarations pages showing two forms in effect for the same period of time, and does not believe it could happen (Exh. A, *id.*, Cantwell depo. p. 20); (5) there is a declarations page for August 1991 to February 1992, showing

---

[1]It is entirely unclear what these declarations pages mean. Plaintiff originally submitted identical copies with his response to the motion for partial summary judgment (Exh. 3 to memorandum in support of response); Defendant, in its reply, seemed to argue that these declarations pages applied to different time periods than the 1991 time period relevant to this case, and therefore should not be considered (reply memorandum, pp. 4-5); then Defendant, in its reply to Plaintiff's supplemental response, attached the same copies and identified them as the declarations pages sent out by Mr. Cantwell, attached to the policy booklets, one by mistake and one as the "correct" policy. Defendant did not explain why the declarations pages sent out with the policies would be for the period August 1989 to February 1990, rather than August 1991 to February 1992.

form 9805.5 as the applicable form (Exh. 2, Pltf.'s Mem. in Resp., attachment to letter from Jacob Vigil to Brian Luke); (6) although Cantwell testified in his deposition for the earlier litigation that his secretary typed the information contained in the "mistaken" 9805.3 certification, he now has stated in another deposition that he does not "know for a fact if it was typed or if it was recent enough that the information was still on the database that we could electronically reproduce it." (*id.*, Cantwell 7/13/01 depo. p. 39); (7) Cantwell also testified that form 9805.5 was supposed to be effective January 1, 1989, and that other forms were not to be used after that date, and that he could therefore tell that the form in effect in 1991 was form 9805.5, because the application for insurance was first made in August 1989 (*id.*, 12/1/95 depo., pp. 68-69, 78-81); (8) as previously noted, however, a declarations page exists for the period beginning August 1989, declaring that form 9805.3 is the applicable form; (9) during the previous litigation, Plaintiff testified that form 9805.5 was in his Subaru file, and that he got the policy from that file; subsequently, however, he has filed an affidavit indicating his attorney, who was selected and paid by Defendant, picked out the policy from the documents Plaintiff had in his possession (Exh. B, Sloan depo. pp. 68-69, Def.'s reply in support of motion for partial summary judgment; Exh. 7-A, Pltf.'s Mem. in Support of Response) (10) a "coverage card" has been submitted, purporting to show what coverage was available in December 1991, and from which Cantwell's secretary obtained the information she typed on the form (if indeed she typed the form rather than printing it from the computerized database); this coverage card does contain the number 98055, but the information as to what that number means is entirely illegible (Exh. D, Reply to Supp. Response).

     From the foregoing, the Court concludes as follows. There is persuasive evidence that form 9805.5 was the form in effect at the time of the accident. This evidence consists of the declarations page covering that period of time, which is the only declarations page produced to date bearing the

correct time period, and which explicitly refers to form 9805.5; the coverage card, assuming the original is more legible than the copy submitted to the Court; Plaintiff's testimony in his prior deposition, as well as the simple fact that he possessed a copy of policy form 9805.5 and apparently did not possess a copy of policy form 9805.3; and the evidence that the original certification of 9805.3 was an error and was not based on any information contained in Defendant's database. In opposition to this evidence is the following: Defendant originally certified that 9805.3 was the policy form in effect at the time of the accident; Defendant determined this certification was a mistake only after receiving a demand letter pointing out that 9805.3 might provide more coverage than 9805.5;[2] Plaintiff had in his possession form 9805.4, without a declarations page, but with a renewal notice possibly related to that form; the multiple declarations pages issued for the August 1989 to February 1990 time period indicate the same thing could be possible for the August 1991 to February 1992 time period – that is, there might be confusion as to whether one policy form or another, or both, are in effect; there is a possibility that the original certification of 9805.3 came directly from a database, rather than being typed by Cantwell's secretary; and there is a possibility that Plaintiff did not personally determine that form 9805.5 was the policy in effect at the relevant time, but his insurance company attorney did.[3]

---

[2]The Court need not, and does not, express an opinion as to whether this increased-coverage argument is valid or not.

[3]Defendant has attempted to argue that Cantwell's change in testimony, indicating the possibility that the original certification was not typed but was printed from a database, is an example of the frailty of human memory. Defendant also argues that Plaintiff's affidavit is a sham. Both of these issues are classic issues of credibility, to be resolved at trial rather than on summary judgment. The affidavit is not so directly contrary to Plaintiff's prior deposition testimony as to allow the Court to disregard it. In the deposition, Plaintiff stated he gave the policy to his attorney; in the affidavit, he in effect said he gave all his documents to his attorney, who picked out form 9805.5. These could easily be different ways of saying the same thing, one more precise than the other.

It is thus apparent that summary judgment is not appropriate at this time. Too many questions remain about the origins of certain documents, and the sources of information used to make the original and subsequent certifications that are at the root of this case.

**Motion for Summary Judgment on Unfair Practices Claim**

In opposing Defendant's motion for summary judgment on this claim, Plaintiff argued that the unfair practices committed by Defendant consisted of Defendant's conduct in retracting the certification of 9805.3 as the applicable policy, refusing to pay $300,000 to settle the underlying lawsuit, failing to properly investigate which policy form was in effect at the time of the accident, and then assuring Plaintiff that he had nothing to worry about and Defendant would take care of him. All of these actions occurred long after the policy had initially been sold to Plaintiff. Defendant therefore argues that the requirements of the New Mexico unfair practices statute have not been met, because no misrepresentations were made "in connection with the sale, lease, rental or loan of goods or services..." *See Stevenson v. Louis Dreyfus Corp.*, 811 P.2d 1308, 1311 (N.M. 1991) (discussing requirements of unfair practices claim).

While both sides briefed *Stevenson*, at the September 18 hearing the Court raised a question concerning the meaning of a Court of Appeals case, *G & G Servs., Inc. v. Agora Syndicate, Inc.*, 993 P.2d 751 (N.M.App. 2000). In *G & G*, an insured party obtained a jury verdict against an insurer, based on the insurer's failure to investigate and defend a claim against the insured. The Court of Appeals held there was substantial evidence to support the plaintiff's Unfair Practices Act claim, because the insurer's actions had caused it to fail to deliver the quality or quantity of goods contracted for. 993 P.2d at 760. If *G & G* accurately states New Mexico law, summary judgment cannot be granted on this claim, because Plaintiff maintains Defendant failed to deliver the amount of coverage he had purchased, due to the actions Defendant took in connection with the claim

6

underlying this case. Further review of *G & G* and several pertinent New Mexico Supreme Court cases, however, leads to the conclusion *G & G* is not a correct statement of New Mexico unfair practices law. *G & G* relied solely on the defendant's actions taken after the initial insurance contract had been entered into, and after a claim had been made on that contract. The case did not require that any oral or written statement, constituting a false or misleading representation, be the basis for liability. Furthermore, the case did not discuss the requirement that this false or misleading statement have been made in connection with the sale of the insurance policy. According to Supreme Court precedent, however, all of the foregoing must be present to properly state a claim under the Unfair Practices Act. *See Stevenson*.

It is not enough, then, as the *G & G* case suggests, for an insurer to simply fail to provide the coverage contracted for. *See Stevenson*, 811 P.2d at 1311-12. The misleading statements complained of must have been made at the time of the original sale of the insurance policy, or at least concern that original sale. *See id.* (reversing unfair practices verdict because there was no evidence that defendant knowingly made any false or misleading statement of any kind in connection with the negotiation of the oral agreement). In this case, Plaintiff complains only of actions taken by Defendant in connection with the claim made against the policy, not of actions that were connected to the sale of the policy. These are not the types of claims at which the Unfair Practices Act is aimed. *See Stevenson* (New Mexico statute is modeled after Uniform Deceptive Trade Practices Act; deceptive practices singled out by the statute can be roughly subdivided into conduct involving either misleading trade identification or false or deceptive advertising). To the extent *G & G* is contrary to this holding, the Court need not follow it. *Cf. Craven v. Univ. of Colorado Hosp. Auth.*, 260 F.3d 1218, 1231 (10th Cir. 2001) (decisions of intermediate appellate court of a state are not binding on federal court, although they may be used to ascertain state law unless there is persuasive indication

7

the highest court of the state would decide otherwise).  Summary judgment will therefore be granted on the Unfair Practices Act claim.

### Conclusion

Based on the foregoing, summary judgment will be granted as to the Unfair Practices Act claim, but denied as to the motion for partial summary judgment seeking to establish the policy limits in effect at the time of the accident.

### ORDER

A Memorandum Opinion having been entered this date, it is hereby ORDERED that Defendant's motion for partial summary judgment (Doc. 225) be, and hereby is, DENIED; and Defendant's motion for partial summary judgment on Count IV of the complaint (Doc. 218) be, and hereby is, GRANTED.

Dated this 3rd day of October, 2001.

BRUCE D. BLACK
United States District Judge

**ATTORNEYS**:
**For Plaintiff**:
Lisa K. Vigil, Esq. and Steven Vogel, Esq.

**For Defendant**:
Terry R. Guebert, Esq. and RaMona G. Bootes, Esq.