IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSEPH EDWARD SLOAN, BRYON Z.
MOLDO, Chapter 7 Trustee – In re Joseph
Edward Sloan, Debtor,

      Plaintiffs,

vs.                                               Civ. No. 00-702 BB/WWD

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, a foreign
corporation, and RANDAL W. ROBERTS, Esq.

      Defendants.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDATION

      This matter comes before the Court upon Plaintiffs' Motion for Entry of Attorneys' Fees, Gross Receipts Tax, Costs and Interest (hereinafter "motion") filed November 19, 2001 and referred to the undersigned on March 15, 2002. Under the law in the Tenth Circuit, a post-judgment motion for attorney fees is a dispositive matter triggering the provisions of 28 U.S.C. § 636(b)(1)(B) which permit a report and recommendation to be made to the referring district judge by the magistrate judge. Pettyjohn v. Shalala, 23 F.3d 1573 (10th. Cir. 1994). While the motion has been pending, the Clerk has entered an Order settling costs, and Plaintiffs have filed objections to that Order. Costs will not be addressed here. The motion is not accompanied by a memorandum as required by our local rules. Plaintiffs submitted 118 pages of exhibits with the motion. Defendant State Farm has filed a detailed response.

## PROPOSED FINDINGS.

1

***Plaintiffs' Entitlement to Attorney Fees.***

1. Plaintiffs claim that "[t]here are two separate statues [sic] in New Mexico which provide for the award of Attorney's fees". In the special verdict rendered by the jury, the jury found that State Farm knowingly and willfully violated the New Mexico Insurance Code, and that the violations were a proximate cause of Plaintiffs' damages. Defendant's argument that the statement of the presiding judge negates the jury finding is not persuasive. Defendant is liable for attorney fees under § 59A-16-1 *et seq.*, N.M.S.A. 1978; however, the award of attorney fees is discretionary. Defendant is correct in arguing that N.M.S.A. 1978 § 39-2-1 does not apply to this claim where proceeds of the coverage would be paid to a third party. Hobbs v. Nutmeg Insurance Co., 242 F.3d 388, 2000 WL 1763455 (10th Cir. 2000).

***Overview of Attorney Fees Sought by Plaintiffs' Counsel.***

1. Defendant questions the accuracy and veracity of the hours and amounts claimed by Plaintiff in their application, arguing that "[t]he Motion should be denied as it is inaccurate and deceptive and fails to satisfy the statutory requirements for an award of attorney fees". Defendant then cites specific examples questioning Plaintiffs' attorneys' submissions of hours spent in preparation of the law suit. The examples cited by Defendant raise valid questions, and the Plaintiffs' reply, except for the affidavit of Ms. Lucero to refute Defendant's suggestion that she billed for time spent in a bar, makes no serious attempt to meet the matters raised about Plaintiffs' lawyers' hours in Defendant's Response.

2. An item by item examination of the hours of Plaintiffs' counsel discloses the identical or near identical entries cited by Defendant, the excessive amounts of time spent performing such routine and simple activities as reviewing Notices of Non-Appearance, and the time spent in

reviewing Defendant's "plaintiffs' third set of interrogatories [non-existent] from defendant state farm [sic]."  An adjustment of the amounts claimed as fees by Plaintiffs' counsel is warranted.

    3.  The review of Plaintiffs' attorneys' time sheets is necessarily limited since much of the material, conversations, etc., referred to in the attorney hours ledgers are not before me. Nevertheless,  it is possible to get some meaningful impressions as to the entries, and inspection of some of the materials being reviewed  by counsel when they are the Court's orders or other materials in the Court files.  For example, the scheduling order entered July 20, 2000,  required 4/10 hours for "receipt and review" by Mr. Vogel on  July 22, 2000.  The Order of approximately 125 words sets limits on the number of interrogatories, requests for admission, depositions (including duration), and it also sets deadlines for service of reports from expert witnesses, and for the completion of discovery.  The Order is made up of simple declaratory sentences and it can be read slowly in less than a minute.  The reader may need to take some action or to note something but a total of twenty-four minutes is excessive.  The same analysis applies to the Order entered on  July  20th waiving our packet rule on motion filing.  That form Order is routinely used when one of the parties is filing electronically.  Even if it were being encountered for the first time, which is not the cased here, twenty-four minutes is excessive.  On the other hand , looking at Mr. Vogel's time entries on May 4, 2001, the amount of time spent in reviewing two relatively short opinions by the magistrate judge is reasonable; particularly, if the materials leading up to those opinions were considered at the same time.  These examples illustrate some of the difficulty in reviewing the record of attorney fees.  They are not a representative sampling.

    4.  Mr. and Ms. Vigil keep what are apparently detailed time records.  It would be a waste of judicial resources to try to ferret out all instances of excessive charges made by the counsel in

this matter. The graphic examples given by the Defendant show that there is a strong possibility that some of the time records may be duplicitous and that they were prepared after the fact; and, as Defendant indicates, some of the charges made by Ms. Vigil antedate her being appointed to pursue the claim on February 11, 1999. While Defendant seeks to disallow Plaintiffs' attorney fees altogether, such a sanction would be overly severe in that it might tend to chill efforts to pursue insurance companies on valid bad faith claims. However, Plaintiffs' attorney fees are overstated and in numerous instances they may be unreasonable.

### *Hourly Rates for Plaintiffs' Attorneys.*

5. Adjusting the fees sought is marginally more appropriate than the severe sanction sought by Defendant. The credentials and experience of the attorneys involved and the difficulty and length of the litigation have been considered. Although the hourly rates sought by Plaintiffs' counsel are higher than the Court would usually set, the Defendant, failing for once in this law suit to take a contrary position to Plaintiffs, has not contested the rates sought; accordingly, in this instance the hourly rates of Plaintiffs' counsel, which are supported by appropriate affidavits, are reasonable and should be allowed.

### *Number of Hours and Fees for Plaintiffs' Attorneys.*

6. Steven Vogel.

Except for a very few entries on Mr. Vogel's time records which coincide in time spent and dates with similar entries made by Mr. or Ms. Vigil or both Vigils, Defendant fails to raise any question as to Mr. Vogel's records much less a substantial question. It does not seem strange that there should be some similar entries by attorneys reviewing the same materials, and the examples pointed out involving Mr. Vogel are hardly incriminating. Mr. Vogel's time should

4

stand as submitted in the amount of 555.30 hours. When this number of hours is multiplied by the hourly rate of $285.00, Mr. Vogel's bill for attorney fees is $158,260.50 plus New Mexico gross receipts tax.

    7. Jake Vigil

    7.1 Initially, Defendant argues that Mr. Vigil should not be awarded attorney fees because Lisa Vigil stated in a letter dated December 19, 2000, that since Mr. Vigil would be testifying at trial, "he will be withdrawing as counsel for this case". Defendant goes on to point out that "[i]nstead of withdrawing, Mr. Vigil continued to bill time for the next four months...." Ms. Vigil's letter contains no stated date for Mr. Vigil's proposed withdrawal. Since the unopposed motion by Plaintiffs to withdraw attorney Jake Vigil, Esquire, was filed April 10, 2001, and granted by an Order entered April 11, 2001, Mr. Vigil did withdraw well in advance of the trial so that he could be available as a witness at the trial. Defendant's interpretation of "will be withdrawing" attempts to twist a proposed future action to be undertaken by Mr. Vigil for a specific reason not yet matured to a date more to Defendant's liking. Ms. Vigil's representation was timely fulfilled, and Defendant's complaint about Mr. Vigil's billing for the "next four months" is baseless.

    7.2 Next, Defendant argues "[c]uriously, Mr. Vigil even attempts to bill the sum of $1,770.00 for the time he spent as a witness at the taking of his own deposition". This is not "curious". It is not unusual for attorneys whose depositions are going to be taken to seek a court ruling as to whether they are entitled to be paid their hourly fee at their deposition. Whether such fees are allowed depends on the circumstances; for example, is the lawyer going to be asked to give expert opinions. No such ruling was sought in this case, and the $1,770.00 amount sought

5

should be denied. Only the statutory witness fee of $40.00 should be paid to Mr. Vigil for appearing as a witness at his deposition.

7.3 Defendant's examples of duplicative and excessive billings by Mr. and Ms. Vigil and Ms. Lucero on March 14, 2000, and on February 21, 2001, are clearly reflected in the time sheets of the Vigils, and there is no attempt whatever to rebut the unfavorable inference which would naturally flow from comparison of the two sets of time records submitted by the Vigils. Taken together with the additional unrebutted assertion that only 9 of the 140 time entries made by Mr. Vigil in his time records "are not duplicative of <u>identical</u> entries made by Lisa Vigil, Esq., Steve Vogel, Esq., and Amalia Lucero, Esq." (Emphasis supplied), it appears all too likely that the bulk of Mr. Vigil's entries were derived from the time records of the other attorneys in the case. Such a manufactured record without an adequate explanation cannot be the basis for assessing attorney fees. No doubt Mr. Vigil worked as an attorney in this case: however, since no usable record of that work was submitted, Mr. Vigil's portion of the attorney fee application should be denied.

<u>8. Lisa Vigil</u>

8.1 Defendant questions Ms. Vigil's claim for 47 hours of her time "prior to receipt of the order appointing her to represent the Trustee". Plaintiff does not address this assertion in its reply.

8.2 Defendant also questions the 3.6 hours[1] spent on March 14, 2001, by Ms. Vigil to review nine one-paragraph notices of Non-Appearance; and the 3.3 hours spent by Ms. Vigil on February 12, 13, and 14, 2001, for drafting eleven deposition notices. Plaintiffs fail to address

---

[1] Defendant notes that attorney Vogel spent only 4/10 hours to do the same work.

these matters in their reply. Defendant argues from these and other examples that Ms. Vigil's hours are overstated.

8.3 The difficulty of carrying out a detailed audit of an attorney's claimed hours is addressed above. While striking Ms. Vigil's fee application altogether may be overly severe, a reduction of the hours is called for in the face of the unexplained and unrebutted examples given by Defendant. In making this reduction the additional burden placed on the court when there are such unexplained excesses in a fee application as well as the apparent lack of candor on the part of counsel should be considered. Under the circumstances, a twenty percent reduction in the fees claimed by Ms. Vigil would be appropriate. Accordingly, the fees due her from Defendant are $203,836.00 plus gross receipts tax.

9. Amalia Skogen Lucero.

Defendant's complaints about Ms. Lucero's billing take exception with Ms. Lucero's taking 2.5 hours to review nine one paragraph Notices of Non-Appearance, and with her charges for what Defendant considers "paralegal tasks". These complaints by Defendant are not well taken nor are the complaints about time spent by Ms. Lucero in trial preparation on October 12, 2001. Defendant also complains of Ms. Lucero's charges for 25 hours in connection with her trip to Greeley, Colorado for a deposition on July 23, 2001. Ms. Lucero was merely an observer at the deposition which was taken by telephone by Ms. Vigil and defense counsel. However, in her affidavit attached to the Reply filed in connection with the instant motion, Ms. Lucero explains the time spent on this trip in sufficient detail to support one-half the fees sought for the trip and deposition. Accordingly, her hours will be reduced by 12.5. The fees due for Ms. Lucero's work (423.4 hours) in this case are $52,925.00 plus gross receipts tax.

10. *Paralegal charges.*

Defendant should pay the paralegal charges in the amount of $1,671.84 for Pauline Guillen-Montano and $3,026.24[2] for Ideal Assistant.

11. *Prejudgment Interest*

Plaintiffs seek prejudgment interest.  Defendant resists this stating that the jury already compensated Plaintiffs for interest.  In Plaintiffs' reply, the statutory basis for prejudgment interest is restated.  In <u>Hobbs v. Nutmeg Insurance Co.</u>, 242 F.3d 388, 2000 WL 1763455 (10th Cir. 2000), the Court of Appeals for the Tenth Circuit reversed an award of prejudgment interest under analogous circumstances.  Although Plaintiffs' Reply seeks to add an argument under N.M.S.A. 1978 § 56-8-4[3] , a prejudgment interest award would not be appropriate in this instance and the request should be denied.

## RECOMMENDATION

I recommend that Plaintiff's counsel be awarded attorney fees and fees for paralegal assistance as set out above, and that the court deny prejudgment interest.

_____
UNITED STATES MAGISTRATE JUDGE

---

[2] These two amounts include gross receipts tax.

[3] In the original Motion only N.M.S.A. 1978 § 54-8-3 was argued.